IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHRN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY WHALUM, and | ) | |
| SHIRLEY GLENN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Judge: |
| CORRECTIONS, WEXFORD HEALTH | ) | |
| SOURCES, INC., and EDWARD JACOB, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME, Plaintiffs, ASHLEY WHALUM (formerly known as ASHLEY BORUTA) and SHIRLEY GLENN, by and through their attorneys, John Malkinson, Seth R. Halpern and Meredith W. Buckley of Malkinson & Halpern, P.C., and for their Complaint at Law against Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SOURCES, INC. and EDWARD JACOB, state as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff, ASHLEY WHALUM, f/k/a ASHLEY BORUTA ("Plaintiff" or "MS. WHALUM"), is a female citizen of the State of Illinois and a resident of the County of Will, City of Romeoville.

2.      Plaintiff, SHIRLEY GLENN ("Plaintiff" or "MS. GLENN") is a female citizen of the State of Illinois and a resident of the County of Cook, City of Chicago.

3.      Defendant, WEXFORD HEALTH SOURCES, INC. ("WEXFORD" or "Defendant"), is a foreign corporation, with its headquarters located at 501 Holiday Drive, Suite 300, Foster Plaza Four, Pittsburgh, Pennsylvania and is registered and doing business in Illinois,

as a healthcare provider subcontractor to the Illinois Department of Corrections, including at Stateville Correctional Facility. Defendant, at all times relevant herein, was an employer within the meaning of 42 U.S.C. § 2000e(f) and the Illinois Human Rights Act 775 ILCS 5/2-101 *et seq.* and maintained the right to control Plaintiffs, did control the work environment in which the Plaintiffs worked, did control the manner in which they performed their work, maintained the right to discharge employees, including Plaintiffs, and did furnish tools, materials and equipment to Plaintiffs.

4.      Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC"), is an agency of the State of Illinois and for purposes of Plaintiffs' claim and at all times relevant herein, was an employer within the meaning of 42 U.S.C. § 2000e(f) and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* and maintained the right to control Plaintiffs, did control the work environment in which the Plaintiffs worked, did control the manner in which they performed their work, maintained the right to discharge employees, including Plaintiffs, and did furnish tools, materials and equipment to Plaintiffs.

5.      Defendant, EDWARD JACOB, (hereinafter "JACOB" or "WARDEN JACOB"), is a male citizen of the United States and resident of the State of Illinois.  At all relevant times hereto, WARDEN JACOB was, an agent, servant and/or employee of IDOC, within the meaning of 42 U.S.C. §2000e(b) and was employed by IDOC as a Warden or Assistant Warden at the Stateville Correctional Center, in Crest Hill, Illinois. Upon information and belief, at all relevant times, WARDEN JACOB possessed and was delegated authority for personnel and other issues arising at Stateville Correctional Center (hereinafter "STATEVILLE") and made employment decisions that impacted Plaintiff's work at STATEVILLE.

6.     This action is brought by the Plaintiffs against IDOC, WEXFORD and against WARDEN JACOB, individually.

7.     This court has jurisdiction of this case pursuant to, 42 U.S.C. §2000e, *et seq*, as amended by the Civil Rights Act of 1991.

8.     This Court has supplemental jurisdiction over Plaintiffs' Illinois state law claims pursuant to 28 U.S.C. § 1367.

9.     This action properly lies in this district pursuant to 28 U.S.C. §1391 because the claims arose in this judicial district.

10.     Plaintiffs have complied with all administrative prerequisites by filing with the Illinois Department of Human Rights (IDHR) timely Charges of Discrimination for Sexual Harassment and Constructive Discharge and cross filed with the U.S. Equal Employment Opportunity Commission (EEOC).

11.     On April 12, 2022, and soon thereafter, Plaintiffs received their Notices of Rights to Commence an Action in Circuit Court from the Illinois Department of Human Rights.  On or about July 7, 2022, Plaintiffs received their Notice of Right to Sue from the U.S. EEOC on their respective Charges of Discrimination filed against WEXFORD[1].

---

[1] Due to a technical issue, the Notice of Right to Sue from the U.S. EEOC for the Charges of Discrimination against the Illinois Department of Corrections were unavailable at the time of filing.  Representatives from the U.S. EEOC stated that the Notices of Right to Sue for the Charges: *Ashley Boruta v. Ill. Dept. of Corrections,* 21B-2022-00290, and *Shirley Glenn v. Ill. Dept. of Corrections,* 21B-2022-00288, have been requested from the U.S. Department of Justice, that the technical issue is being resolved and that the Notices are to be issued in the immediate future.

## FACTUAL ALLEGATIONS

## ASHLEY WHALUM

12.     On or about September 28, 2016, WEXFORD extended to MS. WHALUM an offer of employment as a Certified Nursing Assistant on the Medical Unit at STATEVILLE, which was and continues to be operated jointly by IDOC and WEXFORD.

13.     Upon hiring, MS. WHALUM was required to complete certain applications, background checks, authorizations and screenings for both WEXFORD and IDOC.

14.     MS. WHALUM was required to complete the requisite onboarding for both WEXFORD and IDOC and was trained and expected to follow policies and procedures mandated by WEXFORD, and also those separately mandated by the IDOC.

15.     MS. WHALUM's job duties primarily involved providing direct health-related assessments and care to IDOC inmates. MS. WHALUM'S work as a Certified Nursing Assistant at STATEVILLE was supervised, controlled and monitored by WEXFORD management personnel, as well as management personnel from the IDOC, including but not limited to WARDEN JACOB.

16.     WEXFORD and IDOC each, individually, supplied MS. WHALUM with the various equipment and supplies that were necessary for her to complete her job duties.

17.     Daily, MS. WHALUM was accompanied by IDOC personnel on every examination or interaction she had with an inmate patient.

18.     Before April 27, 2021, MS. WHALUM had never been in WARDEN JACOB'S office nor had she had any social interactions with him.

19.     On April 27, 2021, after arriving for work at the IDOC that morning, MS. WHALUM entered a room where mandatory Covid-19 testing was provided for workers at

Stateville, and was conversing with a work colleague. As she was about to exit the testing room, WARDEN JACOB, who had been standing nearby, initiated conversation with MS. WHALUM, and said, "See you later".

20.     Later that day, while performing morning rounds of IDOC inmate patients in the Medical Unit, MS. WHALUM was notified on multiple occasions that she was being paged over the radio.  MS. WHALUM was then notified that base was on the phone for her and she picked up the receiver.

21.     When MS. WHALUM answered the phone, she was told that WARDEN JACOB was trying to reach her and to hold while the call was transferred to WARDEN JACOB.  On the call, WARDEN JACOB told MS. WHALUM that he had been paging her and requested that MS. WHALUM come to his office after she had completed her morning medical rounds of IDOC inmate patients. Not knowing the reason for the request, given his high-level supervisory position at IDOC and insofar as he had supervisory control over Plaintiff, MS. WHALUM complied with JACOB'S request and went to his office.

22.     When MS. WHALUM arrived at JACOB'S office, he was seated behind his desk and he then stood up, approached MS. WHALUM and without her consent, hugged MS. WHALUM. He then proceeded to request MS. WHALUM's phone number and a kiss. When she declined, he sexually assaulted MS. WHALUM by pulling down her Covid-19 mask and kissing her, lifting her off the ground, forcibly touched her, including but not limited to pushing up her clothing and placing his mouth and hand on her breast, and forcing her hand to make contact with his exposed penis.

23.     Despite being terrified, in shock, physically overpowered, and extremely violated, MS. WHALUM was able to escape his grasp by using some force and offering to give WARDEN

5

JACOB her phone number. MS. WHALUM gave JACOB a fake phone number and then exited the office. As she was escaping his office, JACOB stated, "I can't wait to get ahold of you."

24.     After escaping from WARDEN JACOB'S office, MS. WHALUM went directly to the Medical Unit and reported WARDEN JACOB's assault, battery and sexually harassing behavior to her supervisors, Ashley Currie, Michelle Smith and Lilybeth Segarra.

25.     At all relevant times, JACOB was an employee of the IDOC and in that capacity was in a high-level, supervisory role at STATESVILLE.

**SHIRLEY GLENN**

26.     On or about late August of 2020, Plaintiff SHIRLEY GLENN began her employment with WEXFORD as a Certified Nurse's Assistant on the Medical Unit at STATEVILLE, which was and continues to be operated by the IDOC and WEXFORD. The last position she held during her employment at STATEVILLE was ADA Facilitator.

27.     Upon her hiring, MS. GLENN was required to complete certain applications, background checks, authorizations and screenings for both WEXFORD and IDOC.

28.     Once MS. GLENN completed the requisite onboarding for WEXFORD and IDOC, MS. GLENN was trained and required to follow policies and procedures mandated by WEXFORD, and also those separately mandated by the IDOC.

29.     MS. GLENN'S work as a Certified Nursing Assistant and as an ADA Facilitator at STATEVILLE was supervised, controlled and monitored by WEXFORD management personnel, as well as management personnel from the IDOC, including but not limited to WARDEN JACOB.

30.     Daily, MS. GLENN was accompanied by IDOC personnel on examinations or interactions she had with inmate patients.

31.     WEXFORD and IDOC, each individually, supplied MS. GLENN with the equipment and supplies that were necessary for her to complete her job duties.

32.     Beginning in February of 2021, WARDEN JACOB engaged in various and repeated behaviors toward MS. GLENN that were sexually harassing, threatening and retaliatory. Examples of such conduct include, but are not limited to, making sexually charged comments to MS. GLENN while she was working, such as sexualized comments about her physical appearance and body and saying "you know you want this". All such comments and interactions were unwelcomed and made MS. GLENN feel extremely uncomfortable, embarrassed, harassed and fearful.

33.     Some of JACOB'S sexually harassing comments and actions were witnessed by other IDOC management staff, including but not limited to Warden Osborne and the IDOC Healthcare Unit Administrator, "Lucy".

34.     Beginning in February/March of 2021, MS. GLENN made several reports to IDOC Healthcare Unit Administrator, "Lucy", about how WARDEN JACOB was making sexualized comments toward her and making her feel uncomfortable.

35.     In early April of 2021, WARDEN JACOB invited MS. GLENN to come to his office to get some pens that were helpful in performing her job duties. While she was alone in JACOB's office, he attempted to sexually touch and hug her. She pushed him away and immediately left his office. MS. GLENN was disgusted, fearful, embarrassed and shocked by JACOB's behavior.

36.     In or around mid-April of 2021, after the incident in his office, MS. GLENN was exiting work and walking to the visitor parking lot at STATEVILLE. While she was walking in the parking lot, seemingly as if he was following her, WARDEN JACOB appeared in his vehicle.

7

He asked her why she was trying to avoid him and his tone and mannerisms were extremely threatening. Given his supervisory position at IDOC/SSC and his previous attempts to physically and sexually assault her, MS. GLENN was extremely fearful of what JACOB might do to her, including fearing that he might inflict physical harm upon her. She was and remains in fear of JACOB.

37.     In late April 2021, immediately following MS. WHALUM'S report of her sexual assault by WARDEN JACOB, WARDEN JACOB was separated from his position at STATEVILLE.

38.     Following WARDEN JACOB'S removal, MS. GLENN was interviewed by the Illinois State Police and asked questions about JACOB'S actions toward her and other employees at STATEVILLE.

39.     After being interviewed by the Illinois State Police, MS. GLENN was informed by her co-workers, including MS. WHALUM, that WARDEN JACOB had sexually harassed and assaulted other female employees at STATEVILLE.

40.     Throughout her employment, including after her interview with the Illinois State Police while on-site at Stateville and after her reports to the IDOC Healthcare Unit Administrator, there was no direct assistance or support provided to MS. GLENN by IDOC and/or WEXFORD in response to the sexual harassment, threats and retaliation she endured from WARDEN JACOB and her complaints of the same. At no time was she ever interviewed about any issues of sexual harassment or threatening behavior by personnel from WEXFORD or IDOC.

41.     After being interviewed by the Illinois State Police, MS. GLENN was subjected to numerous questions and comments from employees at Stateville, as well as by inmates, inferring that she was somehow romantically 'involved' with WARDEN JACOB. These comments and the

perception by her colleagues that she was sexually involved with WARDEN JACOB, which were a direct result of his unabated and unwelcome sexual harassment of her and her cooperation as a witness to these events, were deeply concerning, offensive and caused her great embarrassment and discomfort.

42.     Due to WEXFORD and IDOC'S, complete failure to address her complaints and the ongoing comments and perception outlined above, MS. GLENN was extremely uncomfortable and fearful in continuing her employment at STATEVILLE and further feared that additional sexual harassment, assault or threatening behavior would be accepted and tolerated by WEXFORD and IDOC.  As a result, continuation of employment at STATEVILLE would be unbearable for MS. GLENN and on or about November 11, 2021, MS. GLENN was forced to resign from her position as she could no longer work within such a fearful and intimidating environment.

43.     Accordingly, MS. GLENN was constructively discharged from her employment at the Stateville Correctional Center on or about November 11, 2021.

## COUNT I-WHALUM v. IDOC
### (Sexual Harassment Hostile Work Environment-Title VII)

44.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43, above, as paragraph 44 of Count I, as though fully rewritten, herein.

45.     The sexually harassing conduct of JACOB occurred within the offices of STATEVILLE, during work hours and was neither welcomed nor solicited by Plaintiff, MS. WHALUM.

46.     As Warden (or Assistant Warden) and employee of the IDOC, at all relevant times, JACOB was one of MS. WHALUM'S supervisors.

9

47. At all times relevant, MS. WHALUM was known to be lawfully upon the premises owned and/or operated by Defendant IDOC, specifically STATEVILLE, and was performing her duties as a Certified Nurses' Assistant (CNA) in the IDOC Medical Unit for inmates at the facility.

48. IDOC exerted significant control over the manner in which MS. WHALUM performed her job duties and the work environment that existed at STATEVILLE.

49. IDOC had an obligation to prohibit sexual harassment from the work environment at STATEVILLE.

50. JACOB'S sexually harassing conduct substantially interfered with MS. WHALUM'S ability to complete her work and was disruptive.

51. JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for MS. WHALUM.

52. Upon information and belief, prior to April 27, 2021, Defendant IDOC knew or should have known that JACOB was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at Stateville Correctional Center. Despite such knowledge, IDOC took no immediate or effective action to prevent such harassment in the future, including the actions complained of, herein.

53. The unwelcomed sexually harassing conduct, by a supervisor, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive. Accordingly, such conduct constitutes impermissible sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

54. Defendant IDOC'S course of conduct showed a disregard of MS. WHALUM'S right to have an employment environment free from unlawful sexual harassment.

55. As a result of Defendants' unlawful employment practices complained of herein, MS. WHALUM suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff ASHLEY WHALUM, respectfully prays that this Court enter an Order in her favor and against Defendant, IDOC:

(a) Declaring the conduct of Defendant ILLINOIS DEPARTMENT OF CORRECTIONS, and its agents/employees, including JACOB, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

(b) Awarding MS. WHALUM compensatory damages;

(c) Awarding MS. WHALUM damages for related emotional distress;

(d) Awarding MS. WHALUM reasonable attorneys' fees and costs;

(e) Any other lawful relief deemed just and proper.

## COUNT II-WHALUM V. WEXFORD
### (Sexual Harassment Hostile Work Environment-Title VII)

56. Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43, above, as paragraph 56 of Count II, as though fully rewritten, herein.

57. The sexually harassing conduct of JACOB occurred within the offices of STATEVILLE during work hours and was neither welcomed nor solicited by Plaintiff, MS. WHALUM.

58. As Warden (or Assistant Warden), at all relevant times, JACOB was one of MS. WHALUM'S supervisors.

59. At all times relevant, MS. WHALUM was known by WEXFORD to be lawfully upon the premises known as STATEVILLE as WEXFORD placed MS. WHALUM there as the location of her employment, and MS. WHALUM was performing her duties as a Certified Nurses' Assistant (CNA) in the IDOC Medical Unit for inmates at the facility.

60.     WEXFORD exerted significant control over the manner in which MS. WHALUM performed her job duties and the work environment at STATEVILLE.

61.     WEXFORD had an obligation to prohibit sexual harassment from the work environment at STATEVILLE.

62.     JACOB'S sexually harassing conduct substantially interfered with MS. WHALUM'S ability to complete her work and was disruptive.

63.     JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for the MS. WHALUM.

64.     Upon information and belief, prior to April 27, 2021, Defendant WEXFORD knew or should have known that the STATEVILLE work environment included severe and pervasive sexual harassment and knew or should have known that JACOB was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at STATEVILLE, including CNA's specifically placed there by WEXFORD, such as Plaintiff.  Despite such knowledge, WEXFORD took no effective action to prevent such harassment in the future, including the actions complained of, herein.

65.     The unwelcomed sexually harassing conduct, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive.  Accordingly, such conduct constitutes impermissible sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

66.     Defendant WEXFORD'S course of conduct showed a disregard of MS. WHALUM'S right to have an employment environment free from unlawful sexual harassment.

67.     As a result of Defendants' unlawful employment practices complained of herein, MS. WHALUM suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff ASHLEY WHALUM, respectfully prays that this Court enter an Order in her favor and against Defendant, WEXFORD:

(a)     Declaring the conduct of Defendant WEXFORD HEALTH SOURCES, INC., and its agents/employees, including JACOB in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

(b)     Awarding MS. WHALUM compensatory damages;

(c)     Awarding MS. WHALUM damages for related emotional distress;

(d)     Awarding MS. WHALUM punitive damages;

(e)     Awarding MS. WHALUM reasonable attorneys' fees and costs;

(f)     Any other lawful relief deemed just and proper.

## COUNT III-WHALUM V. WEXFORD
### (Sexual Harassment Hostile Work Environment-IHRA)

68.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43, above, as paragraph 68 of Count III, as though fully rewritten, herein.

69.     The sexually harassing conduct of JACOB occurred within the offices of STATEVILLE during work hours and was neither welcomed nor solicited by Plaintiff, MS. WHALUM.

70.     As Warden (or Assistant Warden), at all relevant times, JACOB was one of MS. WHALUM'S supervisors.

71.     At all times relevant, MS. WHALUM was known by WEXFORD to be lawfully upon the premises known as STATEVILLE as WEXFORD specifically placed MS. WHALUM

there as the location of her employment, and MS. WHALUM was performing her duties as a Certified Nurses' Assistant (CNA) in the Medical Unit for inmates at the facility.

72.     At all times, WEXFORD had an obligation to protect its employees from sexual harassment and prohibit sexual harassment from the environment in which MS. WHALUM worked in STATEVILLE.

73.     JACOB'S sexually harassing conduct substantially interfered with MS. WHALUM'S ability to complete her work and was disruptive.

74.     JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for the MS. WHALUM.

75.     Upon information and belief, prior to April 27, 2021, Defendant WEXFORD knew or should have known that the STATEVILLE work-environment included severe and pervasive sexual harassment and knew or should have known that JACOB was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at Stateville Correctional Center, including CNA's specifically placed there by WEXFORD, such as Plaintiff. Despite such knowledge, WEXFORD took no immediate or effective action to prevent such harassment in the future, including the actions complained of, herein.

76.     The unwelcomed sexually harassing conduct, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive. Accordingly, such conduct constitutes impermissible sexual harassment in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

77.     Defendant WEXFORD'S course of conduct showed a disregard of MS. WHALUM'S right to have an employment environment free from unlawful sexual harassment.

14

78.     As a result of Defendants' unlawful employment practices complained of herein, MS. WHALUM suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff ASHLEY WHALUM, respectfully prays that this Court enter an Order in her favor and against Defendant, WEXFORD:

     (a)    Declaring the conduct of Defendant WEXFORD HEALTH SOURCES, INC., and its agents/employees, including JACOB, in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

     (b)    Awarding MS. WHALUM compensatory damages;

     (c)    Awarding MS. WHALUM damages for related emotional distress;

     (d)    Awarding MS. WHALUM reasonable attorneys' fees and costs;

     (e)    Any other lawful relief deemed just and proper.

## COUNT IV-WHALUM v. JACOB
### (Sexual Harassment – IHRA)

79.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43, above, as paragraph 79 of Count IV, as though fully rewritten, herein.

80.     The sexually harassing conduct of the Defendant JACOB which occurred on the premises of STATEVILLE, was unwelcomed and unsolicited by the Plaintiff.

81.     The sexually harassing conduct of Defendant JACOB substantially interfered with Ms. WHALUM's ability to complete her work duties and was disruptive of the work environment.

82.     Defendant JACOB's sexually harassing conduct created a hostile, offensive and intimidating work environment.

83.     The unwelcomed sexually harassing conduct by JACOB, examples and description of which have been set forth herein, was severe and patently offensive.

15

84.     As Warden (or Assistant Warden), JACOB was Plaintiff's supervisor and JACOB exerted managerial and supervisory control over Plaintiff and Plaintiff's work environment at Stateville Correctional Center.

85.     Defendant JACOB individually participated in the sexually harassing behavior described herein.

86.     Defendant JACOB knew or should have known that the sexually harassing behavior was offensive, intimidating, disruptive and damaging to the Plaintiff and despite such knowledge, he nonetheless engaged in flagrant sexually harassing behavior and conduct.

87.     Defendants' course of conduct showed a disregard of Plaintiff's right to have an employment environment free from unlawful sexual harassment.

88.     As a result of Defendant JACOB's unlawful employment practices complained of herein, Plaintiff suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff ASHLEY WHALUM, respectfully prays that this Court enter an Order in her favor and against Defendant, JACOB:

(a)     Declaring the conduct of Defendant JACOB and its agents/employees is in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

(b)     Awarding MS. WHALUM compensatory damages;

(c)     Awarding MS. WHALUM damages for related emotional distress;

(d)     Awarding MS. WHALUM reasonable attorneys' fees and costs;

(e)     Any other lawful relief deemed just and proper.

## COUNT V-WHALUM V. WEXFORD
### (Wanton & Willful Misconduct)

89.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43 above, as paragraphs 89 of Count V, as though fully rewritten, herein.

90.     Upon information and belief, prior to April 27, 2021, Defendant WEXFORD knew or should have known that Defendant JACOB was a danger to its female employees working at STATEVILLE, including MS. WHALUM, and that it was foreseeable that he would improperly and in an unwanted fashion, touch, assault, batter, physically harm and inflict emotional distress on one or more of such individuals, including MS. WHALUM.

91.     Upon information and belief, despite actual knowledge of JACOB'S propensity to engage in unwanted, unsolicited sexual misconduct with its female employees, WEXFORD took no action to prevent such misconduct or warn its employees, including MS. WHALUM, of the danger posed by JACOB.

92.     Upon information and belief, prior to April 27, 2021, WEXFORD knew or should have known that Defendant IDOC through its policies, or lack thereof, permitted a work environment that resulted in MS. WHALUM being sexually harassed and assaulted by Defendant JACOB while performing her work duties as a CNA.

93.     At all relevant times, WEXFORD had a duty to protect MS. WHALUM, from harm, and in particular from assault and battery, and infliction of emotional distress while she was working at STATEVILLE.

94.     Upon information and belief, at all relevant times, Defendant WEXFORD, by and through its employees, agents, and contractors, knew or should have known that on and prior to April 27, 2021, Defendant JACOB had a particular unfitness for his supervisory position as a Warden and for his employment at STATEVILLE, generally, so as to create a danger of harm to

third persons, including colleagues such as MS. WHALUM, working at the prison. Nevertheless, at the aforementioned date and location, Defendant WEXFORD, individually and by and through its agents and employees, breached its duties and was then and there guilty of one or more of the following wanton, willful or reckless acts and/or omissions:

> a. Willfully and wantonly and/or recklessly caused and allowed the infliction of emotional distress on MS. WHALUM by WARDEN JACOB.
>
> b. Willfully and wantonly and/or recklessly failed to prevent the sexual assault and sexual battery by WARDEN JACOB against MS. WHALUM.
>
> c. Willfully and wantonly and/or recklessly failed to warn MS. WHALUM of the known danger of sexual assault and sexual battery by WARDEN JACOB.
>
> d. Willfully and wantonly and/or recklessly allowed MS. WHALUM to work in a venue where WARDEN JACOB was known to be in a position of authority over her, given his known potential for sexual harassment, assault and battery.
>
> e. Willfully and wantonly and/or recklessly allowed MS. WHALUM to work in a venue where IDOC permitted through its policies, or lack thereof, sexual assault and sexual harassment to exist in the workplace.
>
> f. Otherwise acted willfully, wantonly and/or recklessly with regard to MS. WHALUM.

95.     As a Direct and proximate result of one or more of the aforesaid wanton, willful and/or reckless acts/or omissions by Defendant WEXFORD, MS. WHALUM has suffered, and in the future will suffer, pain, loss of normal life and emotional distress.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against the Defendant WEXFORD HEALTH SOURCES, INC. in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT VI – WHALUM v. JACOB
### (Illinois Gender Violence Act)

96.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43, above, as paragraph 96 of Count VI, as though fully rewritten, herein.

97.     Defendant JACOB committed one or more of the following acts of violence or physical aggression against MS. WHALUM, because she was female:

> a. forcibly restrained Plaintiff in unsolicited and unwelcomed "hug" and refused to release Plaintiff despite her verbal and physical demands;

> b. forcibly removed Plaintiff's COVID facemask and kissed Plaintiff without her consent and against her will;

> c. forcibly removed Plaintiff's shirt and bra without her consent and against her will;

> d. forcibly grabbed Plaintiff's bare breast with his hand without her consent and against her will;

> e. forcibly placed his mouth on Plaintiff's bare breast without her consent and against her will;

> f. forcibly placed Plaintiff's hand on his exposed penis, without Plaintiff's consent and against her will;

> g. and other related acts of violence and physical assault that occurred during this sexual assault on April 27, 2021, in the office of WARDEN JACOB at STATEVILLE, as set forth herein.

98.     Said acts of violence and/or physical aggression constituted a physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under Illinois law and constitute a violation of the Illinois Gender Violence Act, 740 ILCS 82/1 *et seq*.

99.     As a direct and proximate cause of the unlawful conduct alleged herein, MS. WHALUM has suffered emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

WHEREFORE Plaintiff ASHLEY WHALUM, respectfully prays that this Court enter an Order in her favor and against Defendant, EDWARD JACOB, individually:

(a)     Declaring the conduct of JACOB to be in violation of the Illinois Gender Violence Act, 740 ILCS 82/1 *et seq*.;

(b)     Awarding MS. WHALUM compensatory damages in excess of $50,000.00;

(c)     Awarding MS. WHALUM punitive damages;

(d)     Awarding MS. WHALUM reasonable attorneys' fees and costs;

(e)     Any other lawful relief deemed just and proper.

### COUNT VII – WHALUM v. JACOB
**(Assault)**

100.     Plaintiff, ASHLEY WHALUM, repeats and re-alleges paragraphs 1-43 above, as paragraph 100 of Count VII, as though fully rewritten, herein.

101.     Immediately prior to and subsequent to the sexual misconduct allege herein, Defendant JACOB threatened MS. WHALUM with bodily harm and, therefore, did assault her.

102.     Defendant JACOB intended to cause MS. WHALUM an imminent apprehension of harmful or offensive contact.

103.     Defendant JACOB's actions caused MS. WHALUM to experience apprehension of an imminent harmful and offensive contact.

104.     As a direct and proximate result of this intentional conduct, MS. WHALUM has sustained and continues to sustain injuries and damages alleged herein including emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT VIII-WHALUM v. JACOB
### (Battery)

105.    Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43 above, as paragraph 105 of Count VIII, as though fully rewritten herein.

106.    During the sexual misconduct alleged herein, Defendant JACOB intentionally committed unlawful and unwanted physical and sexual contact upon MS. WHALUM and, therefore, did commit battery upon her.

107.    As a direct and proximate result of this intentional conduct, MS. WHALUM has suffered, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against the Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT IX-WHALUM v. JACOB
### (Intentional Infliction of Emotional Distress)

108.    Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43 above, as paragraph 108 of Count IX, as though fully rewritten herein

109.     The conduct, as alleged herein, that JACOB engaged in and subjected MS. WHALUM to, was extreme and outrageous.

110.    Defendant JACOB knew or should have known that his conduct would inflict severe emotional distress upon MS. WHALUM or knew that there was a high probability that his conduct would cause MS. WHALUM severe emotional distress.

111.    As a direct and proximate result of this intentional conduct, MS. WHALUM suffered emotional distress.

112.     As a direct and proximate cause of the unlawful conduct alleged herein, MS. WHALUM has suffered pecuniary losses, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT X-WHALUM v. JACOB
### (False imprisonment)

113.     Plaintiff, ASHLEY WHALUM, repeats and realleges paragraphs 1-43 above, as paragraph 113 of Count X, as though fully rewritten herein

114.     During the course of the physical assault and battery upon MS. WHALUM, Defendant JACOB did unlawfully restrain Plaintiff, resulting in her false imprisonment.

115.     Defendant JACOB acted without any reasonable grounds to believe that MS. WHALUM committed any offense.

116.     As a direct and proximate cause of the unlawful conduct alleged herein, MS. WHALUM has suffered, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against the Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT XI-GLENN v. IDOC
### (Sexual harassment Hostile Work Environment – Title VII)

117.     Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraph 117 of Count XI, as though fully rewritten herein.

118.    The sexually harassing conduct of JACOB occurred within the offices and on the premises of STATEVILLE, during work hours and was neither welcomed nor solicited by MS. GLENN.

119.    As Warden (or Assistant Warden) and an employee of IDOC, at all relevant times, JACOB was one of MS. GLENN'S supervisors.

120.    At all times relevant, MS. GLENN was known to be lawfully upon the premises owned and/or operated by Defendant IDOC, specifically Stateville Correctional Center, and was performing her duties as a Certified Nurses' Assistant (CNA) and ADA Facilitator in the IDOC Medical Unit for inmates at the facility.

121.    IDOC exerted significant control over the manner in which MS. GLENN performed her job duties and the work environment that existed at STATEVILLE.

122.    IDOC had an obligation to prohibit sexual harassment from the work environment at STATEVILLE.

123.    JACOB'S sexually harassing conduct substantially interfered with MS. GLENN'S ability to complete her work and was disruptive.

124.    JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for MS. GLENN.

125.    Upon information and belief, prior to February of 2021, and continuing thereafter, Defendant IDOC knew or should have known that JACOB was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at STATEVILLE.  Despite such knowledge, IDOC took no immediate or effective action to prevent such harassment, including the actions complained of, herein.

126.    The unwelcomed sexually harassing conduct, by a supervisor, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive. Accordingly, such conduct constitutes impermissible sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

127.    Defendant IDOC'S course of conduct showed a disregard of Plaintiff GLENN'S right to have an employment environment free from unlawful sexual harassment.

128.    As a result of Defendants' unlawful employment practices complained of herein, MS. GLENN suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant IDOC:

(a)    Declaring the conduct of Defendant ILLINOIS DEPARTMENT OF CORRECTIONS, and its agents/employees, including JACOB, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

(b)    Awarding MS. GLENN compensatory damages;

(c)    Awarding MS. GLENN damages for related emotional distress;

(d)     Awarding MS. GLENN reasonable attorneys' fees and costs;

(e)    Any other lawful relief deemed just and proper.

### COUNT XII- GLENN v. IDOC
### (Constructive Discharge – Title VII)

129.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 of the Complaint above, as paragraph 129 of Count XII, as though fully rewritten, herein.

130.    The aforementioned sexually harassing conduct, Defendants IDOC and WEXFORD's response and lack of response to sexual harassment; the work environment

Defendants permitted and created at STATEVILLE, and resultant severe emotional distress, including fear for her own safety, made continuing employment so intolerable for MS. GLENN that a reasonable person in the same position as Plaintiff GLENN would have felt compelled to leave the employ of the Defendants.

131.    As a result of the foregoing egregious actions of the Defendants, including IDOC, MS. GLENN'S decision to leave the employ of the Defendants was reasonable given the totality of the circumstances.

132.    Consequently, she left the employ of the Defendants on November 11, 2021 and was constructively discharged as of that date.

133.    The Defendants' course of conduct toward MS. GLENN showed a willful and/or reckless disregard of her rights to employment free from impermissible sexually harassing conduct.

134.    As a further result of the Defendants' above-stated actions, including her constructive discharge, MS. GLENN has been deprived of income in the form of wages and benefits, in an amount to be proved at trial, and has suffered, and continues to suffer emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant IDOC:

      (a)    Declaring the conduct of Defendant ILLINOIS DEPARTMENT OF CORRECTIONS, and its agents/employees, including JACOB, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

      (b)    Awarding MS. GLENN compensatory damages;

      (c)    Awarding MS. GLENN damages for related emotional distress;

      (d)    Awarding MS. GLENN reasonable attorneys' fees and costs;

(e)     Any other lawful relief deemed just and proper.

## COUNT XIII-GLENN v. WEXFORD
### (Sexual Harassment Hostile Work Environment - Title VII)

135.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraphs 135 of Count XIII, as though fully rewritten, herein

136.    The sexually harassing conduct of JACOB occurred within the work environment of STATEVILLE, during work hours and upon exiting the STATESVILLE parking lot and was neither welcomed nor solicited by Plaintiff GLENN.

137.    As Warden (or Assistant Warden), at all relevant times, JACOB was one of MS. GLENN'S supervisors.

138.    At all times relevant, MS. GLENN was known by WEXFORD to be lawfully upon the premises known as STATEVILLE, as WEXFORD placed MS. GLENN there as the location of her employment, and MS. GLENN was performing her duties as a Certified Nurses' Assistant (CNA) in the IDOC Medical Unit for inmates at the facility.

139.    WEXFORD exerted significant control over the manner in which MS. GLENN performed her job duties and the work environment at STATEVILLE.

140.    WEXFORD had an obligation to prohibit sexual harassment from the work environment at STATEVILLE.

141.    JACOB'S sexually harassing conduct substantially interfered with MS. GLENN'S ability to complete her work and was disruptive.

142.    JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for the Plaintiff SHIRLEY GLENN.

143.    Upon information and belief, prior to February of 2021, and continuing thereafter, Defendant WEXFORD knew or should have known that STATEVILLE the work environment

included severe and pervasive sexual harassment and knew or should have that JACOB was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at STATEVILLE, including CNAs specifically placed there by WEXFORD, such as Plaintiff.  Despite such knowledge, WEXFORD took no effective action to prevent such harassment, including the actions complained of, herein.

144.    The unwelcomed sexually harassing conduct, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive.  Accordingly, such conduct constitutes impermissible sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

145.    Defendant WEXFORD'S course of conduct showed a disregard of MS. GLENN'S right to have an employment environment free from unlawful sexual harassment

146.    As a result of Defendants' unlawful employment practices complained of herein, MS. GLENN suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, MS. GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant WEXFORD:

(a)    Declaring the conduct of Defendant WEXFORD, and its agents/employees, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

(b)    Awarding MS. GLENN compensatory damages;

(c)    Awarding MS. GLENN damages for related emotional distress;

(d)    Awarding MS. GLENN punitive damages;

(e)    Awarding MS. GLENN reasonable attorneys' fees and costs;

(f)    Any other lawful relief deemed just and proper.

27

## COUNT XIV-GLENN v. WEXFORD)
### (Sexual Harassment Hostile Work Environment – IHRA)

147.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43, above, as paragraphs 147 of Count XIV, as though fully rewritten, herein

148.    The sexually harassing conduct of JACOB occurred within the work environment of STATEVILLE, during work hours and upon exiting the STATESVILLE parking lot and was neither welcomed nor solicited by Plaintiff GLENN.

149.    As Warden (or Assistant Warden), at all relevant times, JACOB was one of Plaintiff GLENN'S supervisors.

150.    At all times relevant, MS. GLENN was known by WEXFORD to be lawfully upon the premises known as STATEVILLE as WEXFORD specifically placed MS. GLENN there as the location of her employment, and MS. GLENN was performing her duties as a Certified Nurses' Assistant (CNA) and ADA Facilitator in the Medical Unit for inmates at the facility

151.    At all times, WEXFORD had an obligation to protect its employees from sexual harassment and prohibit sexual harassment from the environment in which MS. GLENN worked in STATEVILLE.

152.    JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for Plaintiff GLENN.

153.    JACOB'S sexually harassing conduct created a hostile, offensive and intimidating work environment for MS. GLENN.

154.    Upon information and belief, prior to February of 2021, and continuing thereafter, Defendant WEXFORD knew or should have known that the STATEVILLE work environment included severe and pervasive sexual harassment to occur and knew or should have that JACOB

was prone to and had committed similar acts of sexual harassment and unwanted touching upon female employees and others working on behalf of IDOC and its inmates at STATEVILLE, including CNA's specifically placed there by Wexford, such as Plaintiff.  Despite such knowledge, WEXFORD took no immediate or effective action to prevent such harassment in the future, including the actions complained of, herein

155.    The unwelcomed sexually harassing conduct, examples and descriptions of which have been set forth herein, was severe, pervasive, and patently offensive.

156.    Defendant WEXFORD'S course of conduct showed a disregard of MS. GLENN'S right to have an employment environment free from unlawful sexual harassment.

157.    As a result of Defendants' unlawful employment practices complained of herein, Plaintiff GLENN suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant, WEXFORD:

(a) Declaring the conduct of Defendant WEXFORD HEALTH SOURCES, INC., and its agents/employees, in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

(b)    Awarding MS. GLENN compensatory damages;

(c)    Awarding MS. GLENN damages for related emotional distress;

(d)    Awarding MS. GLENN reasonable attorneys' fees and costs;

(e)    Any other lawful relief deemed just and proper

## COUNT XV GLENN v. WEXFORD
### (Constructive Discharge – Title VII)

158.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraph 158 of Count XV, as though fully rewritten, herein.

159.     The aforementioned sexually harassing conduct, Defendants IDOC and WEXFORD's response and lack of response to sexual harassment; the work environment Defendants permitted and created at STATEVILLE, and resultant severe emotional distress, including fear for her own safety, made continuing employment so intolerable that a reasonable person in the same position as MS. GLENN would have felt compelled to leave the employ of the Defendants.

160.     As a result of the foregoing egregious actions of the Defendants, including WEXFORD, MS. GLENN'S decision to leave the employ of the Defendants was reasonable given the totality of the circumstances.

161.     Consequently, she left the employ of the Defendants on November 11, 2021 and was constructively discharged as of that date.

162.     The Defendants' course of conduct toward MS. GLENN showed a willful and/or reckless disregard of her rights to employment free from impermissible sexually harassing conduct.

163.     As a further result of the Defendants' above-stated actions, including her constructive discharge, MS. GLENN has been deprived of income in the form of wages and benefits, in an amount to be proved at trial, and has suffered, and continues to suffer emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff, SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant WEXFORD:

(a)     Declaring the conduct of Defendant WEXFORD in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*

(b)     Awarding MS. GLENN compensatory damages;

(c)     Awarding MS. GLENN damages for related emotional distress;

(d)     Awarding MS. GLENN punitive damages;

(e)     Awarding MS. GLENN reasonable attorneys' fees and costs;

(f)     Any other lawful relief deemed just and proper.

## COUNT XVI-GLENN v. WEXFORD
### (Constructive Discharge – IHRA)

164.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43, above, as paragraph 164 of Count XVI, as though fully rewritten, herein

165.    The aforementioned sexually harassing conduct, Defendants IDOC and WEXFORD's response and lack of response to sexual harassment; the work environment Defendants permitted and created at STATEVILLE, and resultant severe emotional distress, including fear for her own safety, made continuing employment so intolerable for MS. GLENN that a reasonable person in the same position as MS. GLENN would have felt compelled to leave the employ of the Defendants

166.    As a result of the foregoing egregious actions of the Defendants, including WEXFORD, MS. GLENN'S decision to leave the employ of the Defendants was reasonable given the totality of the circumstances

167.    Consequently, she left the employ of the Defendants on November 11, 2021 and was constructively discharged as of that date

168.    The Defendants' course of conduct toward MS. GLENN showed a willful and/or reckless disregard of her rights to employment free from impermissible sexually harassing conduct.

169.    As a further result of the Defendants' above-stated actions, including her constructive discharge, MS. GLENN has been deprived of income in the form of wages and

benefits, in an amount to be proved at trial, and has suffered, and continues to suffer emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant WEXFORD:

      (a)    Declaring the conduct of Defendant WEXFORD, in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

      (b)    Awarding MS. GLENN compensatory damages;

      (c)    Awarding MS. GLENN damages for related emotional distress;

      (d)    Awarding MS. GLENN reasonable attorneys' fees and costs;

      (e)    Any other lawful relief deemed just and proper.

## COUNT XVII -GLENN v. JACOB
### (Sexual Harassment – IHRA)

170.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraph 170 of Count XVII, as though fully rewritten, herein.

171.    The sexually harassing conduct of the Defendant JACOB which occurred on the premises of STATEVILLE was unwelcomed and unsolicited by the Plaintiff.

172.    The sexually harassing conduct of Defendant JACOB substantially interfered with MS. GLENN's ability to complete her work duties and was disruptive of the work environment.

173.    Defendant JACOBS's sexually harassing conduct created a hostile, offensive and intimidating work environment.

174.    The unwelcomed sexually harassing conduct by JACOB, examples and description of which have been set forth herein, was severe and patently offensive.

175.    As WARDEN, JACOB was Plaintiff's supervisor and JACOB exerted managerial and supervisory control over Plaintiff and Plaintiff's work environment at STATEVILLE.

176.    Defendant JACOB individually participated in the sexually harassing behavior described herein.

177.    Defendant JACOB knew or should have known that the sexually harassing behavior was offensive, intimidating, disruptive and damaging to the Plaintiff and despite such knowledge, he nonetheless engaged in flagrant sexually harassing behavior and conduct.

178.    Defendants' course of conduct showed a disregard of Plaintiff's right to have an employment environment free from unlawful sexual harassment.

179.    As a result of Defendant JACOB's unlawful employment practices complained of herein, Plaintiff suffered and continues to suffer from severe emotional distress, mental anguish and humiliation.

WHEREFORE, Plaintiff, SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant, JACOB:

(a)    Declaring the conduct of Defendant JACOB and its agents/employees is in violation of the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

(b)    Awarding MS. GLENN compensatory damages;

(c)    Awarding MS. GLENN damages for related emotional distress;

(d)    Awarding MS. GLENN reasonable attorneys' fees and costs;

(e)    Any other lawful relief deemed just and proper.

### COUNT XVIII-GLENN v. WEXFORD
### (Willful and Wanton Misconduct)

180.    Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraph 180 of Count XVIII, as though fully rewritten, herein

181.    Upon information and belief, prior to February of 2021, and continuing thereafter, Defendant WEXFORD knew or should have known that Defendant JACOB was a danger to its

33

female employees working at STATEVILLE, including MS. GLENN, and that it was foreseeable that he would improperly and in an unwanted fashion, touch, assault, batter, physically harm and inflict emotional distress on one or more of such individuals, including MS. GLENN.

182.    Upon information and belief, despite actual knowledge of JACOB'S propensity to engage in unwanted, unsolicited sexual misconduct with its female employees, WEXFORD took no action to prevent such misconduct or warn its employees, including MS. GLENN, of the danger posed by JACOB.

183.    Upon information and belief, prior to February of 2021, and continuing thereafter, WEXFORD knew or should have known that Defendant IDOC through its policies, or lack thereof, permitted a work environment that resulted in MS. GLENN being sexually harassed by Defendant JACOB while performing her work duties as a CNA.

184.    At all relevant times, WEXFORD had a duty to protect MS. GLENN, from harm, and in particular from assault and battery, and infliction of emotional distress while she was working at Stateville.

185.    Upon information and belief, at all relevant times, Defendant WEXFORD, by and through its employees, agents, and contractors, knew or should have known that on and prior to February of 2021, and continuing thereafter, Defendant JACOB had a particular unfitness for his supervisory position as a Warden and for his employment at STATEVILLE, generally, so as to create a danger of harm to third persons, including colleagues such as MS. GLENN, working at the prison. Nevertheless, at the aforementioned date and location, Defendant WEXFORD, individually and by and through its agents and employees, breached its duties and was then and there guilty of one or more of the following wanton, willful or reckless acts and/or omissions:

       a. Willfully and wantonly and/or recklessly caused and allowed the infliction of emotional distress on MS. GLENN by WARDEN JACOB.

34

b. Willfully and wantonly and/or recklessly failed to prevent the sexual assault and sexual battery by WARDEN JACOB against MS. GLENN.

c. Willfully and wantonly and/or recklessly failed to warn MS. GLENN of the known danger of sexual assault and sexual battery by WARDEN JACOB.

d. Willfully and wantonly and/or recklessly allowed MS. GLENN to work in a venue where WARDEN JACOB was known to be in a position of authority over her, given his known potential for sexual harassment, assault and battery.

e. Willfully and wantonly and/or recklessly allowed MS. GLENN to work in a venue where IDOC permitted through its policies, or lack thereof, sexual assault and sexual harassment to exist in the workplace.

f. Otherwise acted willfully, wantonly and/or recklessly with regard to MS. GLENN.

186.     As a Direct and proximate result of one or more of the aforesaid wanton, willful and/or reckless acts/or omissions by Defendant WEXFORD, MS. GLENN has suffered, and in the future will suffer, pain, loss of normal life and emotional distress.

WHEREFORE, the Plaintiff, SHIRLEY GLENN, prays for monetary relief against the Defendant WEXFORD HEALTH SOURCES, INC. in an amount greater than fifty thousand dollars ($50,000), plus costs.

### COUNT XIX-GLENN v. JACOB
### (Illinois Gender Violence Act)

187.     Plaintiff, SHIRLEY GLENN, repeats and realleges paragraphs 1-43 above, as paragraph 187 of Count XIX, as though fully rewritten, herein.

188.     In April of 2021, while in Defendant JACOB's office, Defendant JACOB attempted to initiate unwelcomed and unsolicited sexual and intimate contact with MS. GLENN, against her will.  Defendant JACOB made contact with MS. GLENN but MS. GLENN was able to push Defendant JACOB off of her and escape his office after his initial unwelcomed contact.

189. Defendant JACOB committed one or more of the following acts of violence or physical aggression against MS. GLENN, because she was female:

> a. forcibly attempted to restrain Plaintiff in unsolicited and unwelcomed "hug";
>
> b. forcibly made physical contact with Plaintiff's body in an attempt to initiate intimate and sexual contact with Plaintiff;
>
> c. and other related acts of violence and physical assault that occurred in the office of WARDEN JACOB at STATEVILLE, in April of 2021, as set forth herein.

190. Said acts of violence and/or physical aggression constituted a battery under Illinois law.

191. Said acts of violence and/or physical aggression constituted a physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under Illinois law and constitute a violation of the Illinois Gender Violence Act, 740 ILCS 82/1 *et seq.*

192. As a direct and proximate cause of the unlawful conduct alleged herein, MS. GLENN has suffered emotional distress, pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

WHEREFORE Plaintiff, SHIRLEY GLENN, respectfully prays that this Court enter an Order in her favor and against Defendant, EDWARD JACOB, individually:

> (a) Declaring the conduct of JACOB to be in violation of the Illinois Gender Violence Act, 740 ILCS 82/1 *et seq.*;
>
> (b) Awarding MS. GLENN compensatory damages in excess of $50,000.00;
>
> (c) Awarding MS. GLENN punitive damages;
>
> (d) Awarding MS. GLENN reasonable attorneys' fees and costs;
>
> (e) Any other lawful relief deemed just and proper.

## COUNT XX-GLENN v. JACOB
### (Assault)

193.   Plaintiff, SHIRLEY GLENN repeats and realleges paragraphs 1-43 above, as paragraph 193 of Count XX, as though fully rewritten, herein.

194.   Immediately prior to and subsequent to the sexual misconduct allege herein, Defendant JACOB threatened MS. GLENN with bodily harm and, therefore, did assault her.

195.   Defendant JACOB intended to cause MS. GLENN an imminent apprehension of harmful or offensive contact.

196.   Defendant JACOB's actions caused MS. GLENN to experience apprehension of an imminent harmful and offensive contact.

197.   As a direct and proximate result of this intentional conduct, MS. GLENN has sustained and continues to sustain injuries and damages alleged herein including emotional distress, pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

WHEREFORE, the Plaintiff, SHIRLEY GLENN, prays for monetary relief against Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

## COUNT XXI-GLENN v. JACOB
### (Battery)

198.   Plaintiff, SHIRLEY GLENN repeats and realleges paragraphs 1-43 above, as paragraph 198 of Count XXI, as though fully rewritten, herein

199.   During the sexual misconduct alleged herein, Defendant JACOB intentionally committed unlawful and unwanted physical and sexual contact upon MS. GLENN and, therefore, did commit battery upon her.

200.   As a direct and proximate result of this intentional conduct, MS. GLENN has suffered, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, the Plaintiff, SHIRLEY GLENN, prays for monetary relief against the Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

### COUNT XXII – GLENN v. JACOB
### (Intentional Infliction of Emotional Distress)

201.     Plaintiff, SHIRLEY GLENN repeats and realleges paragraphs 1-43 above, as paragraph 201 of Count XXII, as though fully rewritten, herein.

202.     The conduct, as alleged herein, that JACOB engaged in and subjected MS. GLENN to, was extreme and outrageous.

203.     Defendant JACOB knew or should have known that his conduct would inflict severe emotional distress upon MS. GLENN or knew that there was a high probability that his conduct would cause MS. GLENN severe emotional distress.

204.     As a direct and proximate result of this intentional conduct, MS. GLENN suffered emotional distress.

205.     As a direct and proximate cause of the unlawful conduct alleged herein, MS. GLENN has suffered pecuniary losses, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE the Plaintiff, SHIRLEY GLENN, prays for monetary relief against Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

### COUNT XXIII – GLENN v. JACOB
### (False Imprisonment)

206.     Plaintiff, SHIRLEY GLENN repeats and realleges paragraphs 1-43 above, as paragraph 206 of Count XXIII, as though fully rewritten, herein

207.     During the course of the physical assault and battery upon MS. GLENN, Defendant JACOB did unlawfully restrain Plaintiff, resulting in her false imprisonment.

208.     Defendant JACOB acted without any reasonable grounds to believe that MS. WHALUM committed any offense.

209.     As a direct and proximate cause of the unlawful conduct alleged herein, MS. WHALUM has suffered, emotional distress, pain, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, the Plaintiff, ASHLEY WHALUM, prays for monetary relief against the Defendant EDWARD JACOB in an amount greater than fifty thousand dollars ($50,000), plus costs.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

Respectfully Submitted,

s/Seth R. Halpern
Seth R. Halpern, attorney for Plaintiffs

Seth R. Halpern
John R. Malkinson
Meredith W. Buckley
MALKINSON & HALPERN, P.C. CC
33 N. Dearborn Street, Suite 1540
Chicago, Illinois 60602
(312) 427-9600
shalpern@mhtriallaw.com
jmalkinson@mhtriallaw.com
mbuckley@mhtriallaw.com